**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| J & J Sports Productions, Inc., | ) | 1:10-cv-02103-AWI-JLT |
| Plaintiff, | ) ) | ORDER RE: MOTION FOR SUMMARY JUDGMENT |
| v. | ) ) | (Doc. 41) |
| EDWIN O. FLORES, individually and d/b/a EL TAZUMAL RESTAURANT, | ) ) ) | |
| Defendant. | ) ) | |

**I. INTRODUCTION**

Plaintiff J & J Sports Productions, Inc., has filed a motion for summary judgment against defendant Edwin O. Flores. Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law. Accordingly, the motion shall be granted.

**II. FACTS AND PROCEDURAL BACKGROUND**

The Court refers the parties to previous orders for a complete chronology of the proceedings. On November 10, 2010, plaintiff J & J Sports Productions, Inc. (hereinafter referred to as "Plaintiff")

filed its complaint against defendant Edwin O. Flores, individually and d/b/a El Tazumal Restaurant (hereinafter referred to as "Defendant"), asserting causes of action for (1) violation of 47 U.S.C. § 605, (2) violation of 47 U.S.C. § 553, (3) conversion and (4) violation of California's Unfair Competition Law (UCL), California Business and Professions Code Sections 17200 et seq. In the complaint, Plaintiff alleged as follows:

> "Pursuant to contract, Plaintiff J & J Sports Productions, Inc., was granted the exclusive nationwide commercial distribution (closed-circuit) rights to *"Firepower": Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fight Program,* telecast nationwide on Saturday, November 14, 2009 (this included all under-card bouts and fight commentary encompassed in the television broadcast of the event, hereinafter referred to as the *"Program"*).

Plaintiff further alleged:

> "Pursuant to contract, Plaintiff J & J Sports Productions, Inc., entered into subsequent sublicensing agreements with various commercial entities throughout North America, including entities within the State of California, by which it granted these entities limited sublicensing rights, specifically the rights to publicly exhibit the *Program* within their respective commercial establishments in the hospitality industry (i.e., hotels, racetracks, casinos, bars, taverns, restaurants, social clubs, etc.).

Plaintiff further alleged:

> "With full knowledge that the *Program* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, each and every of the above named Defendants and/or their agents, servants, workmen or employees did unlawfully intercept, receive, publish, divulge, display and/or exhibit the *Program* at the time of its transmission at their commercial establishment in Bakersfield, California located at 8331 Kern Canyon Road #13, Bakersfield, California 93306. [¶] Said unauthorized interception, reception, publication, exhibition, divulgence, display and/or exhibition by each of the Defendants was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain."

Defendant did not file an answer to the complaint or other responsive pleading within the time allotted by the Federal Rules of Civil Procedure. On February 9, 2011, Plaintiff filed a request for entry of default, and Defendant's default was entered by the Clerk of Court. On March 10, 2011, Plaintiff filed a motion for default judgment. On April 15, 2011, Defendant filed an opposition to Plaintiff's motion for default judgment and a motion to vacate his default. On May 18, 2011, the Magistrate Judge granted Defendant's motion to vacate his default and denied Plaintiff's motion for default judgment. On May 19, 2011, Defendant filed an answer to the complaint, asserting fourteen

affirmative defenses and what effectively amounted to a denial of the allegations. On August 27, 2012, Plaintiff filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), seeking a judgment as to liability and damages in favor of itself and against Defendant on the section 605, section 553 and conversion claims.[1] Defendant did not oppose Plaintiff's motion.

### III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (2010) (citing *Celotex, supra,* at p. 325). If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538. A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the motion is unopposed, the movant is not

---

[1] The motion is essentially for summary adjudication, as Plaintiff does not seek judgment as to liability or damages on the UCL cause of action.

3

absolved of the burden to show there are no genuine issues of material fact, *Henry v. Gill Industries, Inc.,* 983 F.2d 943, 949-50 (9th Cir. 1993), although the court may assume the movant's assertions of fact to be undisputed for the purposes of the motion and grant summary judgment if the facts and other supporting materials show the movant is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2), (3).

## IV. DISCUSSION

***A. The section 605 claim*** – Plaintiff's first cause of action asserts Defendant's unauthorized interception and exhibition of *the Program* violated section 605 of the Federal Communications Act of 1934, as amended.  Section 605 prohibits the unauthorized interception and exhibition of closed-circuit television programming, see *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery,* 152 F.Supp.2d 438 (S.D.N.Y. 2001), and satellite-delivered programming.  *DirecTV, Inc. v. Webb,* 545 F.3d 837, 843 (9th Cir. 2008).  Subsection (a) of the statute provides in pertinent part: "[N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . .  No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, . . . or meaning of such intercepted communication to any person."  47 U.S.C. § 605(a).  "Any person aggrieved by a violation of subsection (a)" may bring a civil action for actual or statutory damages for each violation.  47 U.S.C. § 605(e)(3)(C).  "Any person aggrieved" includes "any person with proprietary rights in the intercepted communication."  47 U.S.C. § 605(b)(6).

In support of the motion for summary judgment, Plaintiff submits the affidavit of its president, Joseph M. Gagliardi, who reaffirms the testimony he provided in an affidavit submitted in support of Plaintiff's March 10, 2011 motion for default judgment.  Gagliardi testified Plaintiff purchased and retained the commercial exhibition licensing rights to *the Program* and thereafter

4

sublicensed those rights to its commercial customers. Gagliardi further testified that domestic commercial establishments contracting with Plaintiff were required to pay Plaintiff a commercial sublicense fee (based on the capacity of the establishment) to broadcast *the Program*, and that at no time did Defendant's establishment, El Tazumal Restaurant, ever lawfully license *the Program* from Plaintiff. Gagliardi further testified that to the best of his knowledge, Plaintiff's programming could not be mistakenly, innocently or accidentally (i.e., inadvertently) intercepted. Plaintiff also refers the Court to the declaration of investigator Gilbert Tate, also submitted with its March 10, 2011 motion for default judgment. Tate testified that on November 14, 2009 – the night *the Program* was telecast – he entered the establishment known as El Tazumal at approximately 9:30 p.m. and observed a 50" LCD flat screen television on the back wall of the restaurant displaying the eleventh round of a boxing match between professional fighters Manny Pacquiao and Miguel Cotto. According to Tate, Cotto was wearing white trunks and Pacquiao was wearing red.

       The fact Plaintiff retained the commercial exhibition licensing rights to *the Program* is demonstrated by *the Program*'s rate card, which is attached as an exhibit to Gagliardi's affidavit. The rate card states on its face: "Closed Circuit Information [¶] All commercial locations that have been licensed to carry this event must have a valid license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, G&G Closed Circuit Events Inc. There is NO OTHER LEGAL LICENSOR. Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY." The Court observes Gagliardi has testified in other cases that Plaintiff uses G&G Closed Circuit Events to sell closed-circuit licenses to commercial locations throughout the United States, *see e.g., J & J Sports Productions, Inc. v. Veloz,* slip copy, 2012 WL 3528002 (E.D.Cal. 2012) at *3-*4, and presumably it was for that reason G&G Closed Circuit Events – rather than Plaintiff – prepared the rate card evidencing the commercial licensing fees applicable to *the Program*. Based on the foregoing, the Court finds Plaintiff has met its initial burden of showing that (1) Defendant did not obtain a license from Plaintiff to receive the signal for *the Program* at El Tazumal, (2) *the Program* was unlawfully received and exhibited at El Tazumal

on November 14, 2009 and (3) Plaintiff is a "person aggrieved" under section 605. Defendant has not filed a written opposition and has therefore failed to raise a genuine issue of material fact. Accordingly, summary adjudication shall be granted in favor of Plaintiff as to the section 605 claim.

Pursuant to an adjudication of liability on the section 605 claim, Plaintiff further moves for maximum statutory damages of $10,000.00 pursuant to section 605(e)(3)(C)(i)(II) and the maximum statutory enhancement of $100,000 pursuant to section 605(e)(3)(C)(ii), for total damages of $110,000.00. "[T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). "[I]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." 47 U.S.C. § 605(e)(3)(C)(ii). Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds neither an award of maximum statutory damages nor the maximum statutory enhancement is warranted in this case.

While Tate testified he conducted two separate headcounts when he visited El Tazumal the night *the Program* was telecast, he never saw more than thirty patrons even though he believed the establishment had a larger capacity. In addition, Plaintiff has provided no evidence to show Defendant promoted *the Program* or charged a premium for food and beverages while it aired. Under these circumstances, the Court finds it difficult to believe Defendant experienced any significant commercial advantage or private financial gain from airing *the Program*. Furthermore, nothing suggests Defendant was a repeat offender who had intercepted and broadcast closed-circuit events on previous occasions. Plaintiff directs the Court to Defendant's responses to requests for admission and production of documents propounded by Plaintiff, wherein Defendant objected to all requests on ground they violated his Fifth Amendment right against self-incrimination. From this, Plaintiff contends an inference Defendant experienced significant commercial advantage and/or private

6

financial gain from airing *the Program* should be drawn. The Court does not agree, especially since Plaintiff could likely have filed a successful motion to compel Defendant to provide further responses over his Fifth Amendment objections. *See Avant! Corp. v. Superior Court,* 79 Cal.App.4th 876, 886-87, 94 Cal.Rptr.2d 505 (2000). Plaintiff, however, did not. Thus, the Court exercises its discretion to award statutory damages in the amount of $4,400.00 with no enhancement.

***B. The section 553 claim*** – Plaintiff's second cause of action asserts Defendant's unauthorized interception and exhibition of *the Program* violated section 553 of the Federal Cable Communications Policy Act of 1992, as amended. Section 553(a) provides in pertinent part: "(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). "Any person aggrieved by a violation of subsection (a)(1)" may bring a civil action for actual or statutory damages for each violation. 47 U.S.C. § 553(c)(3)(A). Consistent with the analysis of Plaintiff's section 605 claim above, the Court finds Plaintiff has met its initial burden of showing that (1) Defendant received *the Program* at El Tazumal on November 14, 2009, (2) *the Program* was offered over a closed-circuit system and (3) Defendant was not specifically authorized to receive *the Program* by law and (4) Plaintiff is a "person aggrieved" under section 553. Again, Defendant has not filed a written opposition and has therefore failed to raise a genuine issue of material fact. Accordingly, summary adjudication shall be granted in favor of Plaintiff as to the section 553 claim.[2]

***C. The conversion claim*** – The third cause of action asserts Defendant's alleged misappropriation of *the Program* constituted conversion. In California, conversion is "the wrongful exercise of dominion over" property belonging to another. *Burlesci v. Petersen,* 68 Cal.App.4th 1062, 1066, 80 Cal.Rptr.2d 704 (1998). The elements of conversion are "(1) the plaintiff's ownership or right

---

[2] Plaintiff does not request damages as to the section 553 claim.

to possession of personal property, (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Fremont Indemnity Co. v. Fremont General Corp.,* 148 Cal.App.4th 97, 119, 55 Cal.Rptr.3d 621 (2007). Intangible personal property such as television signals may be the subject of a conversion action. See *Don King Productions/Kingvision v. Lovato,* 911 F.Supp. 419, 423 (N.D.Cal. 1995). Having reviewed the pleadings and all competent and admissible evidence submitted, the Court finds Plaintiff has met its initial burden of establishing the elements of conversion. Again, Defendant has not file a written opposition and has therefore failed to raise a genuine issue of material fact. Accordingly, summary adjudication shall be granted as to the conversion claim. Plaintiff further requests damages for conversion. Tate testified the capacity of El Tazumal is 40 persons, and the rate card submitted by Plaintiff showed for an establishment with a capacity of up to 100 persons, *the Program*'s licensing fee was $2,200.00. Thus, Plaintiff is entitled to $2,200.00 as compensatory damages for conversion.

***D. Attorneys' fees and costs*** – Lastly, Plaintiff seeks an award of attorneys' fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), which provides the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Plaintiff may brief the issue of attorneys' fees and costs and provide documentation supporting the request for such an award within thirty days of entry of this order.

## V. DISPOSITION

Based on the foregoing, Plaintiff's motion for summary judgment is GRANTED and damages AWARDED in favor of Plaintiff and against Defendant in the amounts of $4,400.00 and $2,200.00 for the section 605 violation and conversion, respectively, for total damages of $6,600.00. Plaintiff may file a motion for attorneys' fees and costs with supporting documentation within 30 calendar days of entry of this order. All future dates are hereby VACATED.

IT IS SO ORDERED.

Dated:   November 26, 2012

UNITED STATES DISTRICT JUDGE